UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARK MCQUEEN,

     Plaintiff,

v.

MARK MCCULLICK,

     Defendant.

Case No. 2:17-cv-11967-LJM-EAS
Honorable Laurie J. Michelson

---

**OPINION AND ORDER DENYING PETITION FOR HABEAS CORPUS**

---

In 2011, Mark McQueen was convicted of first-degree criminal sexual conduct in a state court. As this was McQueen's fourth felony, the state court sentenced him to a term of 25 to 40 years' imprisonment. McQueen now seeks a writ of habeas corpus from this federal court pursuant to 28 U.S.C. § 2254. McQueen's petition raises 16 claims (several of which are comprised of several more claims).

The Court will deny the petition. McQueen's first five claims were largely adjudicated "on the merits" by the Michigan Court of Appeals and that court's decision was largely not based on an unreasonable application of U.S. Supreme Court precedent, not based on unreasonable factual determinations, and not contrary to Supreme Court precedent, *see* 28 U.S.C. § 2254(d); and to the extent certain claims were not addressed or were addressed unreasonably, those claims lack merit on *de novo* review. McQueen's sixth through ninth claims for a writ of habeas corpus are debatably procedurally defaulted; but this Court elects to address those on the merits and finds that they do not warrant a writ of habeas corpus on *de novo* review. Finally, the Court finds that there is no debate that claims 10 through 16 are procedurally defaulted and McQueen has not excused the default.

# I.

## A.

The charges against McQueen stemmed from allegations that in 2009 he sexually penetrated his then 11-year-old daughter, AM. McQueen's defense was that the allegations were fabricated as part of a child-custody dispute.

AM, 12 years old at the time, testified at McQueen's trial. ECF No. 8, PageID.566. She stated that in 2009, she and her brother, DM, stayed at McQueen's small, one-bedroom apartment on or around Thanksgiving. ECF No. 8, PageID.573. She recalled that AM and her brother slept in the living room. ECF No. 8, PageID.575. AM testified that during the visit, McQueen called her into his room and told her that he was lonely. ECF No. 8, PageID.575. DM was asleep at the time, and McQueen's girlfriend was in the kitchen. ECF No. 8, PageID.576. AM went into the bedroom and fell asleep on McQueen's bed. ECF No. 8, PageID.576. AM woke up to find McQueen touching her private area, the part she used to pee. ECF No. 8, PageID.577. McQueen told her that he was touching her because his father had touched him in the same way. ECF No. 8, PageID.578. AM felt McQueen's fingernail inside of her. *Id.* McQueen threatened to kill her if she would not lay in bed with him. ECF No. 8, PageID.579. AM testified that McQueen touched her in a similar way on two other occasions, but she never told anyone. ECF No. 8, PageID.629. AM further testified that a couple of weeks after Thanksgiving, she told her cousin Kayla what McQueen had done; then, after Kayla told her own mother, AM told her own mother, Nioka Ellis. ECF No. 8, PageID.580.

AM also recalled a recorded phone conversation with her father. Sometime after the incident, AM called McQueen on the phone to confront him about how he touched her; Ellis and a detective sat nearby listening. ECF No. 8, PageID.584. AM told the jury that Ellis and the

detective told her what to say, but what they told her was truthful. ECF No. 8, PageID.585. McQueen denied any inappropriate touching several times during the call. But at one point, McQueen asked AM to forgive him and said that "everybody fucks up." ECF No. 8, PageID.588, 807. A recording of the phone call was played for the jury at trial. *See* ECF No. 8, PageID.807.

On December 17, 2009, Ellis took AM to the hospital. ECF No. 8, PageID.645–46. At the hospital AM saw a nurse, Laraine Moody.

Moody testified at McQueen's trial. Moody told the jury that AM had told her that over Thanksgiving, McQueen had inserted his finger into her vagina. ECF No. 8, PageID.714. According to Moody, AM had told McQueen to stop and that it hurt. ECF No. 8, PageID.715. Moody noted notches in AM's hymen, which was unusual. ECF No. 8, PageID.716, 718. Moody told the jury, "Generally [the notches indicate], direct trauma to the hymen, penis, finger." ECF No. 8, PageID.718. But on cross-examination, Moody admitted something besides a finger could have caused the notches. ECF No. 8, PageID.723–724. There was no way to determine when the injury had occurred. *Id.*

On December 30, 2009, Ellis took AM to talk to the police. ECF No. 8, PageID.731.

In January 2009, Margo Moltmaker from Care House interviewed AM. ECF No. 8, PageID.734.

Moltmaker also testified at McQueen's trial. She explained that during the interview, alternative hypotheses were used to determine whether AM was in fact molested and if so, whether the molestor was McQueen. ECF No. 8, PageID.681–682. According to Moltmaker, AM was able to tell her the where, when, what, who, and why of the incident. ECF No. 8, PageID.683–684. Moltmaker also told the jury that during the interview, AM recalled McQueen saying that he touched her because he had been touched himself. ECF No. 8, PageID.684.

On cross-examination, counsel brought out that Moltmaker's notes indicated that after AM had made disclosures to Kayla (her cousin) and her mother, AM nevertheless went to McQueen's house for Christmas. ECF No. 8, PageID.693. Moltmaker's notes also indicated that AM said she was penetrated twice by McQueen on consecutive days. *Id.* Motlmaker indicated that these incidents occurred around Christmas, although on redirect, Moltmaker indicated that AM said the touchings occurred during Thanksgiving. ECF No. 8, PageID.694, 700.

Robert Wroblewski testified that he worked both as a detective and a firefighter for the City of Centerline, and he was the officer in charge of the case. ECF No. 8, PageID.730. After AM came into the station with her mother and another woman to report the incident, Wroblweski chose to send them to Care House to make a statement so that AM was not subjected to multiple interviews. ECF No. 8, PageID.733–734. Wroblewski attended the Care House interview. *Id.* Wroblewski also arranged for the recorded call from AM to McQueen. ECF No. 8, PageID.736–737. Wroblewski admitted that he never spoke with either of the other people in the apartment at the time of the incident—McQueen's girlfriend or AM's brother. ECF No. 8-12, PageID.747. Wroblewski decided he did not need to speak to AM's brother because AM told him that he was asleep at the time of the incident. ECF No. 8, PageID.753. He decided not to interview McQueen's girlfriend, Tawanna Patterson, because he thought her location in the apartment did not allow her to see or hear anything. *Id.*

Patterson testified that she and McQueen picked up the kids the day before Thanksgiving. ECF No. 8, PageID.762. Patterson recalled a conversation the Sunday after Thanksgiving between McQueen and AM's mother; the two discussed AM and AM's brother repeating the fifth grade for the third time and the conversation "got [AM's mom] a little agitated." ECF No. 8, PageID.767. Patterson recalled the events of the holiday weekend, and she testified that McQueen was out until

4

3:00 a.m. on Saturday. ECF No. 8, PageID.766. Patterson recalled taking the children home to their mother's at 8:00 p.m. on Sunday. ECF No. 8, PageID.766–767. Patterson said that she was with the children the entire time during their stay. ECF No. 8, PageID.768. She said that the apartment was only 565 square feet, and she could see the entire apartment from the kitchen. ECF No. 8, PageID.769. Patterson never saw AM go into the bedroom with McQueen with the bedroom door shut, and she never saw them in bed together at any time during the weekend. *Id.*

Following arguments and instructions, the jury convicted McQueen of first-degree criminal sexual conduct. The court sentenced McQueen to 25 to 40 years' imprisonment.

**B.**

McQueen appealed.

McQueen's appellate counsel asserted that trial counsel was constitutionally ineffective when he failed to object to the forensic interviewer's recounting to the jury the statements that AM had made during the interview. ECF No. 8, PageID.1046.

On appeal, McQueen also filed two supplemental pro se briefs raising four additional claims: (1) that his Fifth, Sixth and Fourteenth Amendment rights were violated because he did not voluntarily and intelligently waive his right to testify, ECF No. 8, PageID.1073, (2) that his trial counsel was constitutionally ineffective for never discussing his case with him (and appellate counsel was constitutionally ineffective for not raising this claim), ECF No. 8, PageID.1076, (3) that his trial counsel's errors rendered his trial fundamentally unfair and that his trial counsel was ineffective in seven ways, ECF No. 8, PageID.1080, PageID.1082–83, and (4) that his trial counsel was constitutionally ineffective for not being prepared to defend (the preliminary exam, apparently) and for failing to dismiss the charges on the basis that McQueen's preliminary exam was beyond the 14-day rule, ECF No. 8, PageID.1101.

The Michigan Court of Appeals considered the arguments McQueen himself raised and affirmed McQueen's conviction. *People v. McQueen*, 2013 WL 3814349 (Mich. Ct. App. July 23, 2013).

McQueen then filed an application for leave to appeal in the Michigan Supreme Court, raising the same claims. The Michigan Supreme Court denied leave. *People v. McQueen*, 840 N.W.2d 350 (Mich. 2013).

## C.

Having completed his direct appeals, McQueen returned to the state trial court and filed a pro se motion for relief from judgment. He raised the following four claims: (1) that constitutionally effective trial counsel would have shown the charge to have been fabricated thus precluding the prosecution from proving guilt with sufficient evidence and that he is factually innocent; (2) that trial counsel's performance was deficient and prejudicial; (3) that appellate counsel was ineffective in pursuing only one weak claim while ignoring stronger claims; and (4) that he has shown both good cause and actual prejudice.

On March 16, 2015, the trial court denied McQueen's motion for relief from judgment.

Apparently, McQueen got notice that his motion had been denied before receiving a copy of the trial court's order denying it. (Perhaps McQueen saw the docket. *See* ECF No. 1, PageID.161.) This prompted McQueen to file two motions: one for reconsideration and one to amend or supplement his motion for relief from judgment. *See* ECF Nos. 8-17, 8-18. McQueen presented seven new grounds for post-conviction relief.

The state trial court denied both motions in a single order. ECF No. 8-19. The court denied the motion for reconsideration because it believed that the seven claims could have been presented in the initial motion for relief from judgment. ECF No. 1, PageID.161. In the alternative, the court

found that the seven claims lacked merit. ECF No. 1, PageID.162–164. As for McQueen's motion to amend-or-supplement, the court treated it as a second motion for relief from judgment. ECF No. 1, PageID.164. But under Michigan Court Rule 6.502(G), a criminal defendant may file only one motion for relief from judgment absent showing a retroactive change in law or newly discovered evidence. Neither of these conditions were satisfied, the trial court found, and so it denied the motion to amend-or-supplement. ECF No. 1, PageID.165.

McQueen sought leave to appeal. The Michigan Court of Appeals denied leave: "The defendant alleges grounds for relief that could have been raised previously and he has failed to establish both good cause for failing to previously raise the issues and actual prejudice from the irregularities alleged, and has not established that good cause should be waived. MCR 6.508(D)(3)(a) and (b)." ECF No. 1, PageID.153.

McQueen filed an application for leave to appeal in the Michigan Supreme Court, but it was also denied under Michigan Court Rule 6.508(D). *People v. McQueen*, 884 N.W.2d 288 (Mich. 2016).

McQueen then filed the petition for habeas corpus pending before this Court. It raises 16 claims, largely reproducing the claims he raised on direct appeal, in his motion for relief from judgment, and in his motion to amend-or-supplement his motion for relief from judgment.

## II.

The analysis of McQueen's petition for a writ of habeas corpus is divided into three parts. Part II.A. addresses claims one through five, i.e., the claims that McQueen presented on direct appeal. Part II.B. addresses claims six through nine, i.e., the claims that McQueen presented in his motion for relief from judgment. And Part II.C. addresses claims 10 through 16, i.e., the claims

that McQueen presented in his motions for reconsideration and to amend-or-supplement the motion for relief from judgment.

## A.

### 1.

McQueen's first claim asserts that his trial counsel was ineffective for failing to object to the testimony of Margo Moltmaker, the forensic interviewer from Care House, regarding statements made by AM during their interview. *See* ECF No. 1, PageID.61–67.

After reciting the legal standard for ineffective-assistance set out in *Strickland v. Washington*, 466 U.S. 668 (1984), the Michigan Court of Appeals rejected this claim as follows:

> Defendant first claims that, on direct and redirect examination, his attorney failed to object when Margo Moltmaker, a forensic interviewer at the Macomb County Child Advocacy Center (Care House), testified about information that the 11-year-old victim provided during her forensic interview. In particular, defendant claims that counsel should have objected to Moltmaker's testimony that the victim provided the same information about the alleged assault more than once and promised to be truthful.
>
> During direct examination, Moltmaker answered, in the affirmative, several closed-ended questions, including whether the victim was "able to open up and talk to you that day," whether she was "able to tell you where on her body she was touched," "when it happened approximately," "who touched her," and whether she "told you who, what, where, when, and why." Asked by the prosecutor whether defendant had ever told the victim why he was touching her, Moltmaker responded, "He indicated [to the victim] that he was touching her because he had been touched himself." While this answer constituted hearsay, and was not admissible under any exception, defendant cannot establish ineffective assistance of counsel. The content of the statement duplicated the victim's own testimony, which the jury had already heard, and counsel may have strategically declined to object, knowing that even a sustained objection would have had no practical effect, as the jurors would have been admonished not to consider the statement from Moltmaker but would not have received a similar instruction with respect to the identical testimony from the victim. Appellate courts will not second-guess questions of trial strategy. *Odom*, 276 Mich. App. at 415. Relatedly, defendant cannot show that he was prejudiced by any error because the jury had already heard the victim's own testimony concerning what defendant had told her, which was not hearsay. MRE 801(d)(2).

Moltmaker also testified that she explained to the victim that one of the "ground rules" of the interview was that subjects "promise that they'll only talk to [her] about things that are true," and the victim made that promise. To the extent this statement was offered to prove its truth, it was admissible as evidence of the victim's then-existing state of mind. MRE 803(3); *see also People v. Coy*, 258 Mich. App. 1, 13-14 (2003). The victim's verbal promise to Moltmaker was evidence of her intent to tell the truth during the interview. As noted, counsel is not required to make futile objections. *Unger*, 278 Mich. App. at 256. Moreover, even assuming arguendo that the statement was not admissible, counsel likely recognized that objecting would have appeared unduly combative. We cannot conclude that counsel's failure to object fell below an objective standard of reasonableness under the prevailing professional norms. *See Uphaus*, 278 Mich. App. at 185.

*People v. McQueen*, No. 306317, 2013 WL 3814349, at *1–2 (Mich. Ct. App. July 23, 2013).

That was an adjudication "on the merits" as that phrase is used in 28 U.S.C. § 2254(d). And that means that McQueen can only obtain habeas corpus relief on his first claim if the Michigan Court of Appeals' adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

Here, the "clearly established Federal law" is *Strickland v. Washington*, 466 U.S. 668 (1984). And under *Strickland*, there is a Sixth Amendment violation only if "counsel's representation fell below an objective standard of reasonableness," *id.* at 688, and "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *id.* at 694.

This Court cannot say that the Michigan Court of Appeals' finding that trial counsel was not constitutionally ineffective in addressing Moltmaker's hearsay testimony involved an unreasonable application of *Strickland*. *Johnson v. Genovese*, 924 F.3d 929, 933 (6th Cir. 2019)

("The standard for § 2254(d) relief and the test for ineffective assistance under [*Strickland*] are each highly deferential. And when the two apply in tandem, review is doubly so." (internal citations and alterations omitted)). Counsel's decision not to object to Moltmaker's testimony could be viewed as part of a defense strategy of showing that AM's multiple statements about what happened were inconsistent and therefore not believable. On cross-examination, counsel elicited testimony that Moltmaker's notes indicated inconsistencies of what McQueen did to AM and when. *See* ECF No. 8, PageID.693–694. When the inconsistencies are taken together with Moltmaker's testimony that the victim promised to tell the truth, it strengthened defense counsel's argument that AM's accusations were not credible.

Nor is this a post-hoc justification for counsel's failure to object. The strategy first appears in defense counsel's opening statement:

> She's already told a lot of people a lot of different things. She's told some stories to some people, other stories to other people. I don't know what she is going to tell you. I don't know all the things that she's going to tell you because I haven't spoken to her myself. But, I have spoken to other people who have spoken to her, and I know she is going to tell you lot of different things.
>
> \* \* \*
>
> I don't know whether she is going to tell you that her father had no clothes, because she's told some people he had no clothes, and she's told other people he had clothes. So, I don't know what she is going to tell you. . . .

ECF No. 8, PageID.556–557.

The strategy appears again in defense counsel's closing argument:

> We then go to the Care House lady and after proper coaching we tell the Care House lady the story. There are discrepancies. Generally, they don't mean too much, whether the robber was wearing a red shirt or an orange shirt. Whether the robber was wearing a white shirt or a light blue shirt. It doesn't mean that you didn't get robbed. But, when it didn't happen in the first place then it means that you didn't get robbed. So, we have one story about dad had his pants on only, he had no shirt on. We have another story, dad had a shirt on, no pants on.

ECF No. 8, PageID.534.

Counsel's decision not to object to Moltmaker's testimony regarding AM's prior statement was arguably part of a reasonable trial strategy of using inconsistencies in AM's prior statement—one in which she promised to be truthful—to attack her credibility. So the state appellate court did not unreasonably apply *Strickland*. Thus, McQueen's first claim for a writ of habeas corpus cannot clear § 2254(d).

## 2.

McQueen's second claim for habeas corpus relief is that his counsel was not prepared to, and did not file, a motion to dismiss based on his preliminary exam being scheduled more than 14 days after arraignment. ECF No. 1, PageID.70. In this claim, McQueen also argues that his counsel was not "prepared to defend" the preliminary examination. *See* ECF No. 1, PageID.68. Indeed, McQueen says he met his counsel for the first time on the date of the exam and thus implies that the two never collaborated on any preliminary-examination defense. ECF No. 1, PageID.72.

The Court begins with McQueen's claim based on the 14-day rule. McQueen says that he was arraigned on February 16, 2010 and a preliminary exam was not scheduled until March 24, 2010—34 days later. ECF No. 1, PageID.69–70. And McQueen says that when he saw his counsel on March 24, 2010, counsel was not prepared to file a motion to dismiss. McQueen says a new preliminary exam date was set for April 15, 2010. By that date, McQueen had been appointed different counsel. But, McQueen says, when April 15, 2010 came around, his new counsel also did not file a motion to dismiss. ECF No. 1, PageID.70. McQueen thus claims that both counsel were constitutionally ineffective.

The Michigan Court of Appeals addressed this claim as follows:

Defendant argues that trial counsel should have objected to the district court's violation of MCL 766.4, which generally requires the court to hold a preliminary

11

examination no later than 14 days after the district court arraignment. This claim lacks merit because defendant waived arraignment in the district court on April 15, 2010, and the preliminary examination was held on the same day, resulting in defendant being bound over to the circuit court, where he was arraigned on April 26, 2010. Because no procedural rule was violated, there was nothing for defense counsel to object to.

*People v. McQueen*, No. 306317, 2013 WL 3814349, at *4 (Mich. Ct. App. July 23, 2013).

Although the record reflects that McQueen was arraigned on April 15, as the Michigan Court of Appeals stated, it also appears that there was some type of 14-day issue, as McQueen stated. *See* ECF No. 8, PageID.361–63. It appears that McQueen was initially arraigned on February 16, but the trial court was not able to schedule McQueen's preliminary examination until March 24. *See* ECF No. 8, PageID.361–63. What McQueen has not shown, however, is that he did not waive the 14-day rule in exchange for release on bond. The prosecutor indicated that because of the 14-day problem, McQueen was released on a $10,000 bond with a GPS tether. *See* ECF No. 8, PageID.361. This suggests that McQueen may have agreed to extend the date for arraignment in exchange for release from prison. After all, even if the claims had been dismissed, the prosecutor could have recharged McQueen. And that also shows why any failure by counsel to move to dismiss under the 14-day rule did not prejudice McQueen. True, McQueen says that the prosecutor might not have recharged him. ECF No. 1, PageID.71 n.3. But that seems implausible: why would the prosecutor who had just decided to charge McQueen with a very serious felony simply let the case go because a preliminary examination could not be scheduled right away?

Thus, even if the Michigan Court of Appeals' reasoning was faulty such that § 2254(d) does not bar relief, McQueen has not shown that counsel's failure to file a motion based on the 14-day rule amounted to a Sixth Amendment violation.

What remains of claim two is McQueen's argument that counsel was not prepared for the preliminary examination.

12

The Michigan Court of Appeals addressed this issue as follows:

> [D]efendant argues that because counsel was appointed immediately preceding his preliminary examination, he was not afforded the opportunity to present a full defense or introduce the testimony of various exculpatory witnesses at the examination. Therefore, defendant asserts that his counsel should have moved to dismiss the charges. We note that a defendant is not entitled to present a full defense at the preliminary examination. Instead, the purpose of a preliminary examination is limited to determining whether probable cause exists to believe that a felony was committed and that the defendant committed it. Even if defendant had presented all the additional evidence that he cites in his supplemental brief, the testimony of the victim, alone, still would have created a conflict in the evidence and a genuine issue concerning defendant's guilt for resolution by the trier of fact. We perceive no ineffective assistance of counsel in this regard.

*People v. McQueen*, No. 306317, 2013 WL 3814349, at *4 (Mich. Ct. App. July 23, 2013) (citations omitted).

McQueen has not shown that this "on the merits" adjudication of his claim was based on unreasonable fact finding or an unreasonable application of a Supreme Court holding. *See* 28 U.S.C. § 2554(d). As the Michigan Court of Appeals stated, the prosecution only needed to establish probable cause—that is not a high bar. And McQueen has not shown that AM's preliminary-examination testimony was so incredible that it was unreasonable for the Michigan Court of Appeals to conclude that "[e]ven if defendant had presented all the additional evidence that he cites in his supplemental brief, the testimony of the victim, alone, still would have created a conflict in the evidence and a genuine issue concerning defendant's guilt for resolution by the trier of fact." Thus, given the likelihood of a bind-over, it was not an unreasonable strategy for defense counsel to decline to give the prosecution a preview of the defense. Accordingly, the Court finds that § 2254(d) bars this portion of claim two.

### 3.

McQueen's third claim is based on his right to testify. He asserts that his counsel never "fully advise[d] him of his absolute right to testify" and that he did not "knowingly, voluntarily,

and intelligently waive his right to testify." ECF No. 1, PageID.76. McQueen also appears to allege that his counsel's failure to file a motion to suppress his criminal record (or other prior bad acts), forced him to not testify. *See* ECF No. 1, PageID.77. McQueen says that he was deprived of a meaningful opportunity to present a complete defense in violation of the Fifth, Sixth, and Fourteenth Amendments. ECF No. 1, PageID.77.

The Michigan Court of Appeals addressed this claim. It stated in part,

> Defendant argues that trial counsel should have filed a motion to suppress his prior conviction "so that he could testify [o]n his own behalf." As discussed hereinafter, defendant waived his right to testify, and none of his prior convictions was entered into evidence. Accordingly, he cannot demonstrate prejudice with respect to this issue.
>
> * * *
>
> The record shows that defendant knowingly and voluntarily waived his right to testify, and the record is devoid of any suggestion of coercion or ineffective advice by counsel. Further, even if the waiver was somehow defective, defendant cannot show that any error was outcome determinative. After all, even if defendant had testified, the evidence still would have created a credibility contest for the jury, and defendant advances no specific arguments to establish that his own testimony would have been particularly helpful to the defense. Furthermore, because defendant waived his right to testify, the prosecution did not seek to introduce evidence of his prior convictions. Accordingly, there was no error in counsel's failure to move to exclude such evidence. We find no error requiring reversal.

*People v. McQueen*, No. 306317, 2013 WL 3814349, at *2, 6 (Mich. Ct. App. July 23, 2013).

In one sense, the Michigan Court of Appeals' reasoning is sound. At the close of the prosecution's case, McQueen and his counsel engaged in an on-the-record colloquy about his right to testify:

> MR. HARADHVALA: Mr. McQueen, I'm your attorney, correct, on this case?
>
> THE DEFENDANT: Yes. . . .
>
> MR. HARADHVALA: And we've talked about the fact that you have the right to testify if you wish to testify?
>
> THE DEFENDANT: Yes.

MR. HARADHVALA: And we've talked about that you have the right not to testify if you choose not to testify?

THE DEFENDANT: Yes.

MR. HARADHVALA: And I've also explained to you that if you do not testify the prosecutor can't tell the jury, hey, Mr. McQueen must be guilty of this crime because he's hiding behind his lawyer's petticoats. She can't tell the jury that, do you understand? That she cannot tell the jury you're guilty because you're not testifying.

THE DEFENDANT: Yes. . . .

MR. HARADHVALA: And based on all the pluses and minuses, and pros and cons of testifying, have you now come to the conclusion about testifying or not testifying?

THE DEFENDANT: Yes.

MR. HARADHVALA: And can you tell the judge whether or not you are going to testify?

THE DEFENDANT: No.

MR. HARADHVALA: You're not going to testify?

THE DEFENDANT: No.

MR. HARADHVALA: And this is freely and voluntarily made?

THE DEFENDANT: Yes.

MR. HARADHVALA: And it is your decision?

THE DEFENDANT: Yes.

ECF No. 8, PageID.759–60. This colloquy, which the Michigan Court of Appeals relied on, supports the state appellate court's finding that "defendant knowingly and voluntarily waived his right to testify," 2013 WL 3814349, at *6.

But in another sense, the Michigan Court of Appeals may have got it backward. McQueen's gripe is that counsel did not file a motion to suppress, and with the possibility of his prior felonies being introduced, his only real choice was to avoid testifying; so, in McQueen's view, his on-the-record election was not truly voluntary (despite his response to the contrary during the colloquy). Yet the Michigan Court of Appeals analyzed the issue the other way: "because defendant waived his right to testify, the prosecution did not seek to introduce evidence of his prior convictions.

Accordingly, there was no error in counsel's failure to move to exclude such evidence." *McQueen*, 2013 WL 3814349, at *6.

But even if the Michigan Court of Appeals erred, this claim does not warrant habeas corpus relief even on *de novo* review. McQueen has not shown that a motion to exclude his prior felony convictions had any chance of success. In other words, he has not shown that there was any legal ground to exclude his prior felony convictions such that a motion would have made any difference in his choice to testify or not. Absent a showing that one or more of his prior convictions (or other bad acts) would likely have been excluded, this Court is left to infer that the state of affairs at the time of the on-the-record colloquy would have been the same with or without a motion having been filed. As such, McQueen has not shown that his counsel's failure to file a motion coerced his waiver.

The Court thus finds that McQueen's third claim is either barred by § 2254(d) or fails under *de novo* review.

## 4.

In his fourth claim, McQueen says that he "did not consult with his lawyer before trial." ECF No. 1, PageID.80. He further asserts that "[t]rial counsel did not provide his client with police reports, medical reports, statements, photos, or anything that defendant McQueen could have reviewed to help build a case." *Id.* McQueen says that he was "not allowed to participate at all in his own defense." *Id.* According to McQueen, "[t]rial counsel would tell defendant McQueen 'shut up, that makes no sense, I'm the lawyer I know what's best.'" *Id.*

The Michigan Court of Appeals addressed this claim. Here is what it said:

The claim that defendant's trial counsel did not consult with him in the 15 months between his arraignment and jury trial is facially dubious. Indeed, defendant admits on appeal that he did discuss the case with his attorney, but was dissatisfied when he was told to "shut up," "that makes no sense," and "I'm the lawyer, I know what's

best." Indeed, when defendant's attorney asked him on the record whether they had "talked about this case a number of times," defendant answered, "Yes."

Attorneys must consult with their clients on " 'whether to plead guilty, waive a jury, testify in his or her own behalf, or take an appeal," ' *Florida v. Nixon*, 543 U.S. 175, 187; 125 S Ct 551; 160 L.Ed.2d 565 (2004) (citation omitted), but "the lawyer has—and must have—full authority to manage the conduct of the trial. The adversary process could not function effectively if every tactical decision required client approval," *Taylor v. Illinois*, 484 U.S. 400, 418; 108 S Ct 646; 98 L.Ed.2d 798 (1988). Because defendant was asked on the record whether he chose to waive his right to testify and has not identified with specificity any other issue about which he was not consulted, he cannot establish constitutionally deficient performance by his attorney in this regard.

Nor can he establish prejudice. Trial counsel competently advocated on defendant's behalf, attempting to cast doubt on the victim's credibility, and defendant has offered no reason to believe that the outcome of the trial would have been different had the attorney-client relationship been more harmonious. No prejudice is presumed in this case. *See People v. Vaughn*, 491 Mich. 642, 671; 821 NW2d 288 (2012) (prejudice is presumed only when counsel was totally absent, prevented from assisting the accused during a critical stage of the proceeding, or burdened by an actual conflict of interest).

*People v. McQueen*, No. 306317, 2013 WL 3814349, at *2 (Mich. Ct. App. July 23, 2013).

This was an "on the merits" ruling and the Court cannot say that the Michigan Court of Appeals' factual determinations were unreasonable or that it unreasonably applied *Strickland*. *See* 28 U.S.C. § 2254(d). In view of the many court appearances and motions and that counsel filed on McQueen's behalf, *see* ECF No. 8, PageID.289–297, 308, 368, 385, 403, and in view of counsel representing McQueen for well over a year before trial, it is not plausible that counsel did not meet and discuss the case with McQueen before trial. Indeed, as the Michigan Court of Appeals stated, McQueen suggests that he met with his counsel prior to trial but counsel told him "shut up, that makes no sense, I'm the lawyer I know what's best." And even if counsel rejected McQueen's approach to the case, that does not necessarily mean counsel was ineffective. Apart from the alleged deficiencies raised in McQueen's other claims for a writ (and addressed elsewhere in this

opinion), McQueen identifies no specific strategy or motion that would have been more successful than the strategies or motions that counsel pursued.

In all, the Michigan Court of Appeals reasonably rejected this ineffective-assistance claim and thus § 2254(d) bars habeas corpus relief.

**5.**

McQueen's fifth claim for habeas corpus relief is really eight claims. In his fifth claim, McQueen lists seven ways that trial counsel was constitutionally ineffective. ECF No. 1, PageID.85. He also says that his counsel was so ineffective (either in a single instance or throughout the entire trial) that he was deprived of a fundamentally fair trial, i.e., he asserts a violation of the Due Process Clause. ECF No. 1, PageID.88.

The Court begins with the seven assertions of ineffective assistance set out in claim five.

*One.* McQueen says that his trial counsel "failed to object" to the "perfunctory" investigation conducted by the prosecution and police. ECF No. 1, PageID.85. McQueen also says that his trial counsel should have more effectively cross-examined AM, AM's mother, Moltmaker, and the Center Line detectives who testified. ECF No. 1, PageID.85.

The Michigan Court of Appeals addressed this claim as follows:

 Defendant also argues that trial counsel "failed to object to the perfunctory investigation of this case," and "failed to more effectively question the prosecution[']s witnesses. . . . "

"Decisions regarding whether to call or question witnesses are presumed to be matters of trial strategy" and it follows that the strategic minutiae of those questions rest within the attorney's discretion. Defendant does not identify in what way counsel could have improved his questions, and our review of the record shows that counsel professionally and rigorously cross-examined each of the prosecution's witnesses, including the victim. Counsel also argued to the jury during closing argument that the victim had created a "tangled web" of "lies," and that the slight damage to her hymen could have been caused by scratching. The crux of defendant's argument is that the prosecution presented a "sketchy description[]" of the assault, but trial counsel ably teased out the weaknesses of the prosecution's

case-in-chief, and the ultimate judge of witness credibility is the trier of fact. The "perfunctory investigation" to which defendant argues his trial counsel should have objected concerns the weight of the evidence, which was another question for the jury to resolve. Accordingly, defendant has shown neither deficient performance nor prejudice concerning this issue.

*People v. McQueen*, No. 306317, 2013 WL 3814349, at *3 (Mich. Ct. App. July 23, 2013) (citations omitted, paragraphing altered).

McQueen has not shown that this "on the merits" determination was legally and factually unreasonable or contrary to a Supreme Court holding. *See* 28 U.S.C. § 2254(d). McQueen does not specify how counsel should have better highlighted weaknesses in the police investigation into his case. Nor does he set out specific questions that counsel should have asked on cross examination that counsel did not (and that would have been more effective than the questions that counsel did ask). McQueen has thus not given this Court good reason to question the Michigan Court of Appeals' determination that "counsel professionally and rigorously cross-examined each of the prosecution's witnesses." Accordingly, the Court finds that habeas corpus relief on this sub-claim of claim five is barred by 28 U.S.C. § 2254(d).

*Two.* During trial, a recording of a phone call between AM and McQueen was played for the jury. On the recording, McQueen denied the specific allegations but also asked for forgiveness and stated that "everybody fucks up." ECF No. 8, PageID.588, 807. McQueen thinks counsel should have challenged the recording's admission. ECF No. 1, PageID.85. McQueen also faults counsel for not objecting to the introduction of child protective services reports and for not reviewing those reports with him prior to trial. ECF No. 1, PageID.85.

Here is what the Michigan Court of Appeals said about these assertions:

Defendant argues that trial counsel should have objected to the audio recording of the telephone conversation between the victim and defendant under MRE 804(b)(6) and MRE 404(b). MRE 804(b)(6) provides for the inclusion of statements by a declarant made unavailable by the opponent. The audio recording was not hearsay

> because it was a statement of a party-opponent. . . . Because the audio recording
> was not introduced as character evidence, MRE 404(b) does not apply. Counsel is
> not required to make futile objections.

*People v. McQueen*, No. 306317, 2013 WL 3814349, at *3 (Mich. Ct. App. July 23, 2013)
(citations omitted).

McQueen has not shown that this on the merits adjudication involved an unreasonable
application of Supreme Court precedent or unreasonable fact finding. 28 U.S.C. § 2254(d). He
makes no effort to say why the Michigan Court of Appeals was incorrect to find that his statements
in the recording were statements by a party opponent (and AM's were not offered for the truth).
*See* ECF No. 1, PageID.85. Nor does he attempt to show how counsel could have otherwise raised
a valid objection. *See* ECF No. 1, PageID.85.

As for the child protective services reports, the Michigan Court of Appeals did not
expressly address counsel's alleged failure to object to their admission. But not only has McQueen
not specified the reports to which he is referring, he again has not shown that any objection by
counsel had any chance of success. He asserts that the reports were inadmissible under Michigan
Rule of Evidence 404(b). ECF No. 1, PageID.85. True, that rule does prevent the introduction of
"other act" evidence "to prove the character of a person in order to show action in conformity
therewith." And maybe (although McQueen does not say) these reports suggested that McQueen
was a bad or abusive parent. But McQueen makes no effort to show why the reports would not be
"admissible for [non-character] purposes, such as proof of motive, opportunity, intent, preparation,
scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident
when the same is material, whether such other crimes, wrongs, or acts are contemporaneous with,
or prior or subsequent to the conduct at issue in the case." Mich. R. Evid. 404(b). Thus, McQueen
has not persuaded the Court (on *de novo* review) that any objection to the introduction of the child-

custody reports had any chance of success. And counsel is not ineffective for failing to make futile objections.

*Three*. McQueen next says his counsel was ineffective for failing to call AM's brother, DM, to testify.

The Michigan Court of Appeals addressed this claim as follows:

> Defendant further argues that trial counsel failed to call [DM], the victim's brother, as a witness, and that [DM] would have provided "valuable information" helpful to the defense. Defendant does not indicate what that information would have been, and the only person who testified regarding [DM's] whereabouts during the assault was the victim, who said that he was asleep in the living room during the assault. In any event, "[d]ecisions regarding to call or question witnesses are presumed to be matters of trial strategy." Even if [DM] had been called, and even if his testimony contradicted the victim's, the resulting conflict in the testimony would have been for the jury to decide. Without identifying with particularity what [DM's] testimony would have included, defendant cannot establish that he was prejudiced by counsel's decision not to question [DM].

*People v. McQueen*, No. 306317, 2013 WL 3814349, at *3 (Mich. Ct. App. July 23, 2013) (citations omitted).

McQueen has not shown that this decision was based on unreasonable fact finding or an unreasonable application of Supreme Court precedent. *See* 28 U.S.C. § 2254(d). A review of McQueen's pro se appeal brief reveals that he did not specify what DM would have told the jury. *See* ECF No. 8, PageID.1082–85, 1089. So it was reasonable for the Michigan Court of Appeals to conclude that McQueen had not shown that was counsel ineffective for failing to call DM.

It is true that in his petition for habeas corpus, McQueen provides some insight into what DM would have said. He asserts, "[DM] would have also testified that when Defendant took them home that day, how their mother and Defendant got into an argument about taking the kids that day and the police were called and they would not allow Defendant to take the kids." *Compare* ECF No. 1, PageID.133. But this is part of another claim in his petition, claim 14 to be specific.

As far as claim five goes, this Court cannot say the Michigan Court of Appeals' adjudication was unreasonable based on what it had before it. *See Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) ("We now hold that review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits."). As for claim 14, the Court will explain later that the claim is procedurally defaulted.

*Four.* In his fourth assertion of ineffective assistance (in claim five of his petition, anyway), McQueen says that counsel failed to file a motion to suppress his prior convictions so that he could testify. The Court has already addressed this claim.

*Five.* McQueen says that counsel never met with him prior to trial to "fully outline" the defense. This too has already been addressed.

*Six.* McQueen faults counsel for not seeking to dismiss his case based on a violation of the 14-day rule. Also addressed.

*Seven.* McQueen's last assertion of ineffective assistance in claim five of his habeas corpus petition is that counsel failed to have a lesser-included offense on the verdict form.

The Michigan Court of Appeals addressed this claim as follows:

> Defendant next argues that trial counsel failed to secure his right to have the jury instructed on the lesser-included offense of second-degree criminal sexual conduct (CSC II). We note that defendant waived any instruction concerning CSC II on the record. At any rate, CSC II is a cognate lesser offense of CSC I, and defendant was accordingly not entitled to a CSC II instruction. Because it would have been improper for the trial court to instruct the jury on CSC II, defendant cannot show prejudice concerning this issue.

*People v. McQueen*, No. 306317, 2013 WL 3814349, at *5 (Mich. Ct. App. July 23, 2013) (citations omitted).

McQueen's petition fails to show why the Michigan Court of Appeals' determination that it "would have been improper for the trial court to instruct the jury on CSC II" was error. In fact,

McQueen's petition says nothing about how the Michigan Court of Appeals erred in addressing this issue. And so it follows that McQueen has not shown it was unreasonable for the Michigan Court of Appeals to find that he was not prejudiced by counsel's failure to seek a CSC II instruction. *See* 28 U.S.C. § 2254(d). It cannot be error to fail to request an improper instruction.

There is one last part to claim five of McQueen's petition. He asserts that taken alone or in aggregate, trial counsel's errors denied him a fundamentally fair trial. ECF No. 1, PageID.88. While it may be the case that counsel's errors may be aggregated to form a Sixth Amendment violation, *see Sanders v. White*, No. CV 03-455-ART, 2017 WL 2129305, at *18 (E.D. Ky. May 16, 2017), it is questionable that counsel's errors may be aggregated to make out a violation of the Due Process Clause, *see Strickland*, 466 U.S. at 684–85 ("The Constitution guarantees a fair trial through the Due Process Clauses, but it defines the basic elements of a fair trial largely through the several provisions of the Sixth Amendment, including the Counsel Clause."). But even if, legally speaking, cumulative errors by trial counsel could amount to a violation of the Due Process Clause, largely for the reasons provided by the Michigan Court of Appeals and this Court in the above analysis, McQueen has failed to show that any errors counsel made, whether in isolation or aggregate, prejudiced him to the extent that he was deprived him of a fair trial. *Cf. Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003) (requiring evidentiary error to be "egregious" to violate the Due Process Clause).

In short, claim five of McQueen's petition does not warrant habeas corpus relief.

**B.**

Having examined the claims that McQueen presented to the Michigan Court of Appeals on direct appeal (and were, for the most part, adjudicated on the merits by the Michigan Court of Appeals), the Court turns to claims six through nine of McQueen's petition. McQueen raised

claims six through nine for the first time in the motion for relief from judgment he filed with the state trial court.

**1.**

As a threshold matter, the Court notes that some of claims six through nine are arguably procedurally defaulted. After the state trial court denied McQueen's motion for relief from judgment, motion for reconsideration, and motion to amend-or-supplement, McQueen sought leave to appeal from the Michigan Court of Appeals. In denying leave, the Michigan Court of Appeals found that McQueen "alleges grounds for relief that could have been raised previously and he has failed to establish both good cause for failing to previously raise the issues and actual prejudice from the irregularities alleged, and has not established that good cause should be waived." ECF No. 1, PageID.153. And in support of this finding, the state appellate court cited Michigan Court Rule 6.508(D)(3)(a) and (b) and those provisions are a procedural bar, *see Guilmette v. Howes*, 624 F.3d 286, 291 (6th Cir. 2010).

That said, the Court elects not to decide whether claims six through nine of McQueen's petition are procedurally defaulted (and, if so, whether McQueen can establish cause and prejudice to excuse the default). The Michigan Court of Appeals appears to have spoken a bit broadly. One of the claims that McQueen raised in his motion for relief from judgment was that his *appellate* counsel had been ineffective. ECF No. 8, PageID.894. McQueen could not have raised that claim prior to his motion for relief from judgment. So that claim, which appears as claim eight of McQueen's habeas corpus petition, was not subject to Rule 6.508(D)(3). *See Guilmette*, 624 F.3d at 291 (providing that Rule 6.508(D)(3) "does not apply to claims of ineffective assistance of appellate counsel"). And McQueen claims that his appellate counsel was ineffective for failing to, among other things, raise the issues that now form claims six and seven of his petition. *See* ECF

No. 1, ECF No. 1, PageID.109–110. (McQueen's petition refers to claims six and seven as the "foregoing issues" or "Issues I & II, *supra*" but that is because he recycled his motion for relief from judgment and claims six and seven were formerly Issues I & II. *Compare* ECF No. 1, PageID.109–110, *with* ECF No. 8, PageID.894–95.) So addressing the appellate-counsel claim, which is not defaulted, would require some assessment of the merits of claims six and seven even if the Court were to find those claims defaulted. As for claim nine, as will be explained, the claim is not a cognizable ground for habeas corpus relief.

So the Court elects to address the merits of claims six through nine rather than apply a procedural bar.

## 2.

Of these, the Court takes claim seven first. There, McQueen argues that his trial counsel was ineffective by not calling an investigator and a court-funded psychological expert at trial. McQueen says that the investigator would have, among other things, testified to photographs showing that the apartment was tiny and that the bedroom was visible from the kitchenette. ECF No. 1, PageID.100, 103. And McQueen says that the court-funded psychological expert, Dr. Katherine Okla, would have testified to the dangers of Moltmaker's questioning technique (recall, Moltmaker conducted the forensic interview of AM). *See* ECF No. 1, PageID.101. In claim seven, McQueen also argues that his trial counsel was ineffective by falsely telling the jury that McQueen grabbed AM by the "chest and private area." ECF No. 1, PageID.102.

Even on a *de novo* review of this claim, it does not warrant habeas corpus relief.

As for counsel's failure to call the investigator and present the investigator's photographs to the jury, the trial transcript reflects that the jury was well aware of the size of the apartment. In his opening argument, McQueen's counsel told the jury that the apartment was a "small, tiny one-

bedroom apartment, half the size of this courtroom. You can basically [see] from anywhere in that apartment, be it the kitchen area, or the living area, look everywhere in the apartment, that's how it is located." ECF No. 8, PageID.556. And then counsel elicited testimony to this effect from McQueen's girlfriend:

> Q Now, how big is your apartment?
>
> A About 565 square feet.
>
> Q Okay. So, would you say it's about half the size of this room, the entire apartment?
>
> A Yes. Yes, it is.
>
> Q And when you were in the kitchen in your apartment, which other rooms can you see?
>
> A All angles of the apartment.
>
> Q So you can see into the living room, you can see into the bedroom?
>
> A Yes, and the back.

ECF No. 8, PageID.769. Counsel could thus have reasonably decided that the investigator's testimony and photographs of the apartment would have been cumulative. And even if not, McQueen has not persuaded the Court that there is a reasonable probability of a different outcome had the investigator been called to testify. So McQueen has not shown ineffective assistance under either prong of *Strickland*.

As for counsel's failure to call Okla to testify on the limitations of the forensic interview process and that AM's answers may have been tainted by questioning prior to the forensic interview, the Court likewise finds that McQueen has not satisfied *Strickland*'s standard for ineffective assistance. It is true that in *People v. Owens*, No. 288074, 2010 WL 4320396 (Mich. Ct. App. Nov. 2, 2010), the Michigan Court of Appeals found counsel constitutionally deficient in part because he did not call Okla to testify about the limits of the forensic interview. *Id.* at *3. But in that case, counsel also failed to do "any research on behavior patterns of sexual abusers" and counsel admitted "that he did not know anything about Michigan's forensic interviewing

protocol." *Id.* at *3. It appeared that trial counsel in *Owens* was "unprepared to counter the prosecutor's assertion that [the victim] was likely telling the truth because she was subjected to the forensic interviewing process." *Id.* That is not the case here. In fact, McQueen's counsel cited *Owens* in his motion for $1,500 to hire Okla. And while the record does not reveal why McQueen's counsel ended up not calling Okla, counsel did cross examine the forensic interviewer, Moltmaker, about the forensic protocol. He asked Motlmaker if she followed "best practices of the protocol" and after obtaining a "yes" answer, pointed out that one of the best practices was to videotape the interview, which had not been done. ECF No. 8, PageID.690. And counsel pointed out that without a videotape, the defense was not able to review AM's body language and non-verbal signals during the interview. ECF No. 8, PageID.690–91. Moreover, counsel highlighted on cross of Moltmaker that the purpose of the forensic interview protocol was to avoid making suggestions to the victim, but that prior to her forensic interview, AM had discussed the matter with her cousin, mother, the police, and a nurse at the hospital. ECF No. 8, PageID.692. Perhaps Okla would have been able to call into question Moltmaker's testimony with greater effect, but McQueen has not shown that Okla's testimony would have been substantially more persuasive to the jury than his counsel's cross examination. Accordingly, the Court does not find that counsel's election not to call Okla was constitutionally deficient. Or, if it was, that there is a reasonable probability of a different outcome had Okla testified.

That leaves McQueen's assertion that his counsel was ineffective for falsely telling the jury that he grabbed AM by the chest and private area.

While perhaps counsel made literally false statements, McQueen entirely misconstrues counsel's goal and how the jury could have interpreted counsel's statement. In cross examining a

detective, McQueen's counsel sought to show that saving a child from falling by grabbing them was not criminal:

> Q. So, let's paint a scenario. . . . Let's say we are friends . . . . so I ask you to come over to my place and talk about me joining the police force . . . . And we sit down and we start talking, and we're talking and we're talking, in earnest. And while we're doing that, my eleven year old son or 12 year old daughter is on the couch right there, falling asleep, but we're interested in our conversation. A point in time occurs where I see the child is starting to almost fall off the sofa or couch, I say hang on one moment. I pick up that child. Now watch my hands, detective. . . . I pick up the child with my hands like that and then move it from the edge of the sofa to a more safer spot (indicating). Have I committed any crime if you saw that?
>
> A. No.
>
> Q. We'll do it one more time. I pick up the child, there's one hand on the chest or the breast area, the other hand on the lower part of the stomach or the groin area, and I move that child from the edge of the sofa to a safer spot on the sofa. There would be no crime you said?
>
> A. That's correct.

ECF No. 8, PageID.744–745. Then, at closing, counsel stated:

> The problem with lying is you need a second lie to cover the first lie. You need the third lie to cover the second lie. And then we need a fourth lie to cover the third lie and so on. It would have been so easy to speak the truth and say, when I was on the couch falling down, daddy picked me up and one of his hands was on my genital area and the other hand was on the breast area, and he put me down on the sofa.

ECF No. 1, PageID.809. Perhaps McQueen is correct—perhaps he never saved AM from a fall from the couch. But the point of counsel's argument was to show that there was another way that AM could have believed she was touched by McQueen. The Court perceives no ineffective assistance or prejudice.

On *de novo* review, McQueen's seventh claim does not entitle him to habeas corpus relief.

### 3.

Claim six of McQueen's petition is a bit of a mixed bag. At some points he indicates that he is raising an insufficiency-of-evidence claim. ECF No. 1, PageID.90–92. But McQueen also argues that his trial counsel's performance was deficient in many respects and that competent

counsel would have shown that he was actually innocent (or, at least, shown that the evidence was not sufficient for a conviction). *See* ECF No. 1, PageID.89, 92–95, 97. He also argues he is actually innocent. ECF No. 1, PageID.96–97.

To the extent McQueen raises an insufficiency-of-evidence claim, sufficient evidence supports the conviction if "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

McQueen attempts to show why the jury should have doubted the prosecution's case. McQueen points out the apartment was very small and that the bedroom where he is accused of touching AM was visible from the kitchenette. ECF No. 1, PageID.92. And, says McQueen, AM herself testified that his girlfriend was in the kitchenette the entire incident. *Id.* Further, says McQueen, AM alleged that she stayed in McQueen's room for the night, but if that were true, it could not also be true that his girlfriend was in the kitchenette during the entire incident (unless, implausibly, McQueen's girlfriend stayed in the kitchenette the whole night). *See id.*

McQueen's argument does not show that not even one reasonable juror would find him guilty beyond a reasonable doubt. The jury heard all of the evidence supporting these arguments. And it also heard testimony from AM. The jury heard from Moltmaker who recounted the interview she did with AM. The jury heard from McQueen's girlfriend. McQueen did not testify but the jury heard a portion of his phone call with AM. Thus, in large part, the jury was effectively tasked with assessing witness credibility. And while perhaps McQueen has shown that parts of AM's testimony were not accurate, he has not shown that her testimony about being touched was so incredible that not one juror would have been persuaded by her account. So McQueen's insufficient-evidence claim does not warrant habeas corpus relief even on *de novo* review.

The Court thus turns to the several ways McQueen says his counsel was ineffective in claim six. McQueen asserts that his trial counsel refused to interview or call witnesses that would have supported his defense that AM's allegations were fabricated as part of a child-custody dispute. He argues that Felicia Hampton would have testified that McQueen and AM's mother argued a lot about raising AM and AM's brother; she would have also testified that McQueen had threatened to take custody of the two kids. ECF No. 1, PageID.93. McQueen says that Patrice Patterson would have testified that McQueen, his girlfriend, and the two kids were at his place until 9:00 or 10:00 p.m. on Thanksgiving. *Id.* And Doris McQueen would have testified that the two kids stayed at her house the following night (Friday to Saturday). *Id.* And, says McQueen, Archie McQueen would have testified that McQueen was with him at a rap party on Sunday night and that McQueen did not leave until after 2:00 or 3:00 a.m. *Id.* McQueen also faults counsel for not calling the private investigator and Okla. ECF No. 1, PageID.94. McQueen further says that his counsel failed to show that he was "playing cards at a casino during the times in question." *Id.* Aside from calling the alibi witnesses, McQueen also faults his counsel for not cross-examining AM on his whereabouts on the nights of Thanksgiving weekend.

McQueen has not shown that his trial counsel was constitutionally ineffective by not calling certain people to testify.

As for Felicia Hampton, the jury was already aware that McQueen and AM's mother were in a child custody dispute as this was presented by counsel in opening and, at least to some extent, implied during cross examination of AM's mother. ECF No. 8, PageID.558 ("[T]here is bad blood, extreme bad blood between the mother and the father."); ECF No. 8, PageID.663 (eliciting testimony that AM's mother needed the money that the state was providing for child care and that she would no longer receive it if McQueen obtained custody). So the Court finds it reasonable trial

strategy to not call Hampton, and if not, no reasonable probability of a different outcome had Hampton been called. *See Strickland*, 466 U.S. at 688, 694.

As far as the alibi witnesses, even if Patrice Patterson, Doris McQueen, and Archie McQueen were able to account for McQueen's or AM's whereabouts on Thanksgiving, the following Friday night, and the following Sunday night, it remains that most of Thanksgiving night and all of Saturday night would not have been accounted for. Moreover, while AM testified during the preliminary exam that the touching had occurred on Sunday night, she told the jury that she could not remember what day of the week it occurred. ECF No. 8, PageID.617. As the witnesses McQueen say counsel should have called could not account for times when the molestation might have occurred, counsel could have reasonably believed that these witnesses testimony would have done little to persuade the jury. Likewise, McQueen has not shown a reasonable probability of a different outcome had these witnesses been called. *See Strickland*, 466 U.S. at 688, 694.

In the last part of claim six, McQueen says he is actually innocent. While that claim may excuse a procedural default or warrant tolling of the statute of limitations, neither the Supreme Court nor the Sixth Circuit Court of Appeals has ever recognized actual innocence as a free-standing claim for habeas corpus relief. *Cress v. Palmer*, 484 F.3d 844, 854 (6th Cir. 2007).

Accordingly, the Court will not grant McQueen a writ based on claim six of his petition.

## 4.

As noted, in claim eight, McQueen asserts that appellate counsel was ineffective. He focuses on appellate counsel's failure to raise the arguments he presents in claim six and seven of his petition (formerly Issues I & II of his motion for relief from judgment). The Court has just found, on *de novo* review, that the assertions in claims six and seven do not establish ineffective assistance of trial counsel and that the evidence was sufficient to support McQueen's conviction.

True, perhaps an argument could be made that appellate counsel is required to raise strong appeal issues even if a court ultimately finds that they do not warrant upsetting a conviction. But, for reasons explained, none of the arguments presented in claim six and seven of McQueen's petition are particularly strong. Accordingly, the Court does not find that McQueen's appellate counsel was constitutionally deficient for failing to raise the arguments in claims six and seven. And even if appellate counsel was deficient, the Court has found that trial counsel's alleged errors as set out in claims six and seven were not prejudicial to McQueen (in the *Strickland* sense of the term). It follows that appellate counsel's failure to raise the claims was likewise not prejudicial.

McQueen is not entirely clear on this point, but to the extent that McQueen asserts that appellate counsel should have raised the claims that now form claims two through five of his petition for habeas corpus, McQueen has not established he was prejudiced: the Michigan Court of Appeals considered all (or virtually all) of the issues presented in those claims. *See generally People v. McQueen*, No. 306317, 2013 WL 3814349 (Mich. Ct. App. July 23, 2013). True, perhaps the claims might have been more eloquently drafted by a lawyer than McQueen. But the asserted errors (violation of the 14-day rule, that counsel failed to file a motion to suppress his record, that counsel failed to meet prior to trial, that counsel did not adequately question the prosecution's witnesses, that counsel did not challenge admission of the recording or CPS reports, that counsel did not call certain witnesses to testify, and that counsel did not asks for a CSC II instruction) were not legally complicated and thus McQueen was able to (or should have been able to) convey the essence of them to the state appellate court in his pro se brief.

Finally, McQueen faults his appellate counsel for not seeking a *Ginther* hearing, i.e., a hearing in the state trial court to develop the record on an ineffective assistance of trial counsel claim. But McQueen himself sought to remand to the state trial court for a *Ginther* hearing and the

Michigan Court of Appeals denied that motion. ECF No. 8, PageID.1088, 1113. Again, a lawyer might have been able to make a slightly stronger case for remand than a pro se defendant, but McQueen has not demonstrated that had his appellate counsel made the motion and not him, the Michigan Court of Appeals would have likely remanded. And even if the court had remanded, McQueen has not persuaded the Court that trial counsel's testimony at a *Ginther* hearing would have supported his claims. In short, the Court perceives no prejudice in the *Strickland* sense from appellate counsel's failure to seek a *Ginther* hearing.

Accordingly, the Court will not grant a writ based on the assertions of claim eight of McQueen's petition.

## 5.

McQueen's ninth claim for habeas corpus relief is merely a remnant of his motion for relief from judgment. He argues that he clears the procedural bar on motions for relief from judgment set out in Michigan Court Rule 6.508(D)(3). ECF No. 1, PageID.113–15. Thus claim nine is not a basis for habeas corpus relief.

## C.

Remaining are claims 10 through 16 of McQueen's petition. The Court concludes that these claims are procedurally defaulted.

The state trial court found that McQueen was procedurally barred from raising the issues presented in these seven claims. As noted, McQueen first raised these seven claims via a motion for reconsideration and a motion to amend-or-supplement filed after the state court had ruled on his motion for relief from judgment. And the state trial court denied the motion for reconsideration because it believed that the seven claims could have been presented in the initial motion for relief from judgment. ECF No. 1, PageID.161. As for McQueen's motion to amend-or-supplement, the

court treated it as a second motion for relief from judgment and found that McQueen could not clear Michigan Court Rule 6.502(G)'s procedural bar on such motions. ECF No. 1, PageID.164. So although the state trial court did address the merits of the claims, it also clearly enforced state procedural rules governing motions for reconsideration and successive motions for relief from judgment.

The Michigan Court of Appeals likewise found the claims to be procedurally barred. As discussed, in denying leave it stated, "The defendant alleges grounds for relief that could have been raised previously and he has failed to establish both good cause for failing to previously raise the issues and actual prejudice from the irregularities alleged, and has not established that good cause should be waived. MCR 6.508(D)(3)(a) and (b)." ECF No. 1, PageID.153.

Both Michigan Court Rule 6.502(G) and 6.508(D)(3) have been held to be "adequate and independent" state law grounds. *Davis v. Maclaren*, No. 17-2153, 2018 WL 4710071, at *5 (6th Cir. Apr. 3, 2018) ("We have held that Rule 6.502(G) is an adequate and independent state ground for denying review of a federal constitutional claim."); *Akrawi v. Booker*, 572 F.3d 252, 261 (6th Cir. 2009) ("It is well-established in this circuit that the procedural bar set forth in Rule 6.508(D) constitutes an adequate and independent ground on which the Michigan courts may rely in foreclosing review of federal claims.").

The upshot of all of this—failure to comply with a state's procedural rules that are an independent and adequate grounds for denying relief—is that McQueen has waived the right to federal habeas corpus review absent a showing of cause for not complying with the state's procedural rules and actual prejudice resulting from the default. *See Coleman v. Thompson*, 501 U.S. 722, 753 (1991). Alternatively, McQueen can show a "fundamental miscarriage of justice." *See id.*

McQueen has not established good cause. He has not explained why he did not raise these seven claims earlier. True, he might be able to blame appellate counsel for not raising them on direct appeal. But that does not explain why he did not raise the claims himself when he filed his motion for relief from judgment. Moreover, none of the seven claims appear to depend on any facts not known to McQueen when he filed his motion for relief from judgment. Thus, McQueen has not provided the Court with good cause to excuse his default.

McQueen also fails to demonstrate that a fundamental miscarriage of justice occurred. The miscarriage of justice exception requires a showing that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *See Murray v. Carrier*, 477 U.S. 478, 496 (1986). "The term 'actual innocence' is somewhat of a misnomer, though, as this inquiry focuses on legal proof. To have defaulted claims considered on the merits, petitioners are not required to prove their factual innocence but rather 'that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.'" *Smith v. Warden, Toledo Corr. Inst.*, No. 17-3220, 2019 WL 2518311, at *8 (6th Cir. June 18, 2019) (citing *Schlup v. Delo*, 513 U.S. 298, 314–15 (1995)). A credible claim of actual innocence requires a habeas corpus petitioner to "'support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial.'" *Id.* (citing *Schlup*, 513 U.S. at 324). Here, at least in the section of his petition asserting actual innocence, McQueen points to no "new reliable evidence . . . that was not presented at trial." *See* ECF No. 1, PageID.96. And even if the Court were to consider McQueen's proffer about what uncalled witnesses would have stated, for reasons similar to those set out above in addressing those witnesses, the Court does not find that had the

witnesses' testimony been part of the trial, "more likely than not" "no reasonable juror would have found petitioner guilty beyond a reasonable doubt."

Accordingly, the Court finds that claims 10 through 16 of McQueen's petition are subject to procedural default.

## III.

For the reasons provided, the Court DENIES McQueen's petition for a writ of habeas corpus.

Before McQueen may appeal this decision, the Court must determine whether to issue a certificate of appealability. *See* 28 U.S.C. § 2253(c)(1)(A); Fed. R. App. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To satisfy § 2253(c)(2), McQueen must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citation and internal quotation marks omitted).

The Court finds that reasonable jurists would not debate this Court's resolution of McQueen's claims and thus the Court DENIES a certificate of appealability.

If McQueen nonetheless chooses to appeal the Court's decision, he may proceed *in forma pauperis* because an appeal could be taken in good faith. 28 U.S.C. § 1915(a)(3).

SO ORDERED.

s/Laurie J. Michelson
LAURIE J. MICHELSON
UNITED STATES DISTRICT JUDGE


Date: September 16, 2019

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing document was served upon counsel of record and/or pro se parties on this date, September 16, 2019, using the Electronic Court Filing system and/or first-class U.S. mail.


<u>s/William Barkholz</u>
Case Manager